HARRIS v. BOUTWELL.

1. DRAINS — ESTABLISHMENT — STRAIGHTENING BED OF STREAM —
   RIGHTS OF ABUTTING OWNERS.
   The fact that proceedings were taken under the statute to
   make a natural watercourse into a drain, does not affect the
   right of the public or of abutting owners. And such owners
   have a right to drain their land into it; but they may not
   deepen the channel of such stream to the damage of lower
   proprietors.

2. SAME—ESTABLISHMENT.
   Where, on a bill to enjoin the construction of a drain, it ap-
   pears that in times of high water complainant's land is usu-
   ally flooded, and that the additional flow from the proposed
   drain will not impose an additional burden, the drain will
   not be enjoined for that reason.

3. SAME—MAINTENANCE.
   Where a drain has once been legally made, there is at least a
   presumption that, if necessary at all, it should be kept in
   reasonable order; and, where it is apparent that the drain
   into which the proposed drain is to empty has become ob-
   structed so as to impede its flow, the construction of a drain
   emptying into it will be enjoined until the first drain has
   been cleaned out to its original depth and width.

Appeal from Shiawassee; Miner, J. Submitted Janu-
ary 12, 1909. (Docket No. 59.) Decided April 28, 1909.

Bill by Mary E. Harris against John Boutwell, county
drain commissioner, to enjoin the construction of a drain.
From a decree dismissing the bill, complainant appeals.
Reversed, and decree entered for complainant.

*Chandler & Friegel* and *A. E. Cole*, for complain-
ant.

*Odell Chapman*, for defendant.

Complainant seeks in this suit to restrain the construc-

tion of a drain known as the "Hemingway lake drain." The defendant is the county drain commissioner. It is conceded in the bill of complaint that the proceedings to lay out this drain are regular. The sole ground upon which complainant seeks to restrain its construction is that it will precipitate additional water upon a portion of her farm, thereby causing her injury. The outlet of the proposed drain is into the Looking-Glass river, or .the Looking-Glass river drain, above complainant's land. Looking-Glass river is a well-defined and meandered stream, narrow in some places and wide in others. The Looking-Glass river drain was constructed some years, ago along the bed of the stream, except in places where it was constructed to straighten the river. The claim of the complaint is that the Looking-Glass river drain has become filled with, and the flow of water obstructed by, sand, grass, and weeds in its bed, and bushes along its sides, and will not carry off the additional water which will flow into it through the Hemingway lake drain. The Hemingway lake drain is constructed along a well-defined watershed, leading from Hemingway lake to the Looking-Glass river, or the Looking-Glass river drain, which are substantially the same thing, and will be herein referred to as the "Looking-Glass river drain." The court in its decree required that for 20 rods the drain shall be a covered one with 20-inch tile. Proofs were taken in open court, and the bill dismissed.

GRANT, J. (*after stating the facts*). The land through which the Looking-Glass river runs is low with occasional elevations, on one of which the complainant's farm buildings are situated. The Looking-Glass river drain is virtually a widening and deepening of the bed of the river, with an occasional cut for the purpose of straightening and increasing the rapidity of the flow. It is a natural stream. The fact that proceedings were taken under the statute to make it a drain does not affect the right of the public or of parties owning lands along it. Abutting own-

ers have a right to drain land into Looking-Glass river drain (*Treat* v. *Bates,* 27 Mich. 390; *Waffle* v. *Railroad Co.,* 53 N. Y. 11), but they cannot deepen the channel of a stream, serving as an outlet for a lake, to the damage of the lower owners (*Kauffman* v. *Griesemer,* 26 Pa. 407; *Hyatt* v. *Albro,* 121 Mich. 638).

Some of the complainant's land in times of high water is usually flooded. To what extent this drain will add to that flood so as to injuriously affect complainant's land is not clear. Except in times of high water, the Looking-Glass river drain would afford a sufficient outlet. The circuit judge evidently found that the additional flow of water caused by the Hemingway lake drain was not sufficient to injuriously affect her land, and must also have found that the drain was necessary for the public health. The circuit judge filed no opinion. Upon a careful review of the evidence, we conclude that in times of high water the proposed drain does cast an additional quantity of water upon complainant's land. This court has said:

" Where a drain has once been legally made, there is at least a presumption that, if necessary at all, it should be kept in reasonable order." *Barker* v. *Township of Vernon,* 63 Mich. 516.

See, also, *Sturm* v. *Kelly,* 120 Mich. 685. No steps apparently have been taken to clean out the Looking-Glass river drain, which, as constructed, carried off the water more rapidly than did the original river.

After the parties had rested, the complainant, with her solicitor, and the defendant, without the presence of his solicitor, entered into a written stipulation of settlement by which it was agreed that the defendant should be restrained from proceeding with the construction of the Hemingway lake drain until the Looking-Glass river drain was widened and deepened and made a sufficient outlet; that the complainant was to pay $35, the commissioner's expense in laying out the Hemingway lake drain, and that each party should pay their own costs. The others owning lands along the Looking-Glass river drain,

and claiming that they would be injuriously affected by the construction of the Hemingway lake drain, had combined to assist the complainant and bear the proportionate share of the expense of the suit. The defendant represented those who were interested in the construction of the Hemingway lake drain. This stipulation was subsequently brought to the attention of the court, and testimony taken in regard to it. The defendant and those he represented appear to have been satisfied with the settlement, provided it was legal. Evidence was introduced showing the circumstances under which it was made. The court refused to ratify the stipulation until it was signed by all the parties interested in the drain, holding that it was not binding until it was so signed. Both parties in this court ignore this stipulation, and have treated it as of no effect. We therefore have not the benefit of an argument upon it, and should not decide its validity without calling for additional briefs. We will therefore dispose of the case without determining the validity of the stipulation.

The necessity of cleaning out the Looking-Glass river drain is apparent. The burden of taking steps to clean out that drain should not be cast upon the complainant. We think she is entitled to a decree restraining the construction of the Hemingway lake drain until the Looking-Glass river drain is cleaned out to its original depth and width, and that when this is done the defendant may proceed with the construction of the Hemingway lake drain.

A decree will be so entered. Under the circumstances, no costs will be allowed to either party in this court or in the court below.

MONTGOMERY, OSTRANDER, HOOKER, and MOORE, JJ., concurred.